IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| VANESSA BARRETT, et al. | PLAINTIFFS |
| V. | CIVIL ACTION NO. 3:21-CV-124-HTW-LGI |
| CITY OF PELAHATCHIE, et al. | DEFENDANTS |

ORDER

On April 20, 2021, and June 1, 2021, Defendants herein filed Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c)[1]. [Docket nos. 7 and 17]. In response, on October 27, 2021, Plaintiffs filed their Motions to Lift Stay to Allow Qualified Immunity Related Discovery and Amendment of Complaint **[Docket nos. 23 and 26].** Plaintiffs contend that discovery is necessary for them to reply properly to Defendants' Motions for Judgment on the Pleadings.

Opposing Plaintiffs' motions, Defendants argue that Plaintiffs have not pointed to allegations in their Complaint [Docket no. 1] that could plausibly overcome Defendants' qualified immunity defense. Defendants further assert, even so, that Plaintiffs have not stated what limited discovery would be necessary for this court to rule on the pending dispositive motion; therefore, conclude Defendants, qualified immunity discovery is inappropriate. Having reviewed thoroughly the submissions of the parties and the relevant jurisprudence, this court finds as follows.

---

[1] Fed. R. Civ. P. 12(c): Motion for Judgment on the Pleadings. After the pleadings are closed- but early enough not to delay trial- a party may move for judgment on the pleadings.

1

## I. JURISDICTION

Federal courts are courts of limited jurisdiction. The parties have not challenged whether this court possesses subject matter jurisdiction. This court, nevertheless, has an independent obligation to verify it indeed possesses subject matter jurisdiction.

Federal civil subject matter jurisdiction principally arises under Title 28 U.S.C. § 1332[2] and § 1331[3]. The former is commonly referred to as diversity jurisdiction, while the latter is hailed as federal question jurisdiction. Plaintiffs filed their lawsuit in this federal forum, alleging the Defendants had violated a federal enactment: Title 42 U.S.C. § 1983[4] by using excessive force in violation of the Fourth Amendment[5] to the United States Constitution.

---

[2] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
28 U.S.C.A. § 1332 (West)

[3] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
28 U.S.C.A. § 1331 (West)

[4] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C.A. § 1983 (West)

[5] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV

Accordingly, because of the presence of this federal enactment, this court finds that it possesses federal question subject matter jurisdiction under Title 28 U.S.C. § 1331.

## II.   FACTUAL SUMMARY

Plaintiffs Vanessa Barnett and Dris Mitchell (collectively, "Plaintiffs") filed the lawsuit *sub judice* alleging that Defendants had violated the Fourth Amendment rights of Pierre Woods ("Woods") when law enforcement officers shot and killed Woods on February 18, 2019. Plaintiffs are the two natural mothers of G.W. and K.W., Woods' two surviving minor children who are Woods' alleged heirs and wrongful death beneficiaries. Plaintiffs have filed this action on the minors' behalf.

Plaintiffs have named the following Defendants: City of Pelahatchie, Mississippi, Rankin County, Mississippi; Bryan Bailey, Individually and in his Official Capacity as Sherriff of Rankin County, Mississippi ("Sheriff Bailey"); Joseph Daughtry, Individually and in his Official Capacity as Police Chief for the City of Pelahatchie, Mississippi ("Chief Daughtry"); and John Does 1-100, Individually and in their Official Capacities as Employees and Agents of Rankin County, Mississippi, City of Pelahatchie, Mississippi, or "any other Agency of the State of Mississippi" [Docket no. 1].

Construing, as it must, Plaintiffs' allegations in the light most favorable to them, this court's Order herein is based on the following facts. On February 18, 2019, Defendants, law enforcement officers, responded to reports of fired gunshots at Woods' residence, located at 104 Dillard Street, Pelahatchie, Mississippi. According to the Plaintiffs, Woods, who was allegedly inside the home alone, presented as disoriented, mentally challenged and possibly intoxicated. Despite Defendants' repeated requests, Woods initially refused to come out of the residence. In an effort to get him out of the house, Defendants allegedly threw multiple tear gas canisters into

3

the home. Woods then exited his residence, allegedly with his hands extended above his head. No party has stated whether Woods' hands were empty, or holding a weapon when he existed the house.

Plaintiffs' Complaint [Docket no. 1] states:

Upon his exit from the home, defendants, without warning, began firing their weapons at Woods. He immediately fell to the ground and even after he fell to the ground, the defendants continued to fire their weapons at Woods, which left both his body and home riddled with bullet holes. The force used by the law enforcement officers was clearly excessive and constituted a reckless disregard for Woods' safety and welfare.

At the point that Woods exited the home, he posed no immediate threat to defendants or others and there existed no reason that the defendants could not give proper warning before using deadly force. As such, the use of deadly force constituted reckless disregard for Woods' safety and welfare and was clearly unjustified. See *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019)(use of deadly force without warning in a situation where officers were no in immediate danger violates the Fourth Amendment).

Plaintiffs' Complaint adds that the Defendants acted in the course and scope of their employment with Rankin County and City of Pelahatchie and that "each Defendant" was acting under the color of state law at the time Woods was killed.

The Complaint fails to state whether Sheriff Baily and Chief Daughtry were, in fact, present at the subject scene at the time of the shooting. In their Response to Defendants' Motions for Judgment on the Pleadings, however, Defendants state that "Sheriff Bryan Bailey and Police Chief Joseph Daughtry were present at the scene and were actively involved in negotiations, handling of the incident and ultimate excessive force, which led to the death of Pierre Woods." [Docket no. 22, p. 3].

### III.   PROCEDURAL POSTURE

Plaintiffs filed their Complaint in this federal forum on February 17, 2021. [Docket no. 1]. On April 20, 2021, Sheriff Bailey, in his individual and official capacities, filed his Motion for Judgment on the Pleadings [Docket no. 7]. Plaintiffs, on May 5, 2021, filed a Motion for Extension

4

of Time until July 5, 2021, to respond to Sheriff Bailey's Motion [Docket no. 13] Since this court had not received Plaintiffs' response by October 18, 2021, this court entered an Order to Show Cause, which directed Plaintiffs to provide an acceptable reason for their tardiness and to "file their responses in opposition to the Defendants' motions for judgment on the pleadings [Docket nos. 7 and 17] before [October 28, 2021]." [Docket no. 19].

On October 27, 2021, Plaintiffs filed their Response [Docket no. 20] and Amended Response [Docket no. 23], as well as the subject Motions to Lift Stay and for Discovery. On November 2, 2021, Chief Bailey filed his Reply in support of his Motion for Judgment on the Pleadings [Docket no. 28] and Response in opposition to Plaintiffs' Motion to Lift Stay and Allow Qualified Immunity Discovery and Amendment of Complaint. [Docket no. 29]. On November 3, 2021, Sheriff Bailey filed his Reply in support of his Motion for Judgment on the Pleadings [Docket no. 30] and Response in opposition to Plaintiffs' Motion to Lift Stay and Allow Qualified Immunity Discovery and Amendment of Complaint. [Docket no. 31].

On November 10, 2021, and November 11, 2021, Plaintiffs filed their Replies in Support of their Motions to Lift Stay and Qualified Immunity Discovery and Amendment of Complaint [Docket nos. 33 and 34]. Plaintiffs attached, as an Exhibit to their Reply [Docket no. 34], a copy of video footage depicting Woods' death [Docket no. 35].

Defendants have asked this court to strike Plaintiff's Reply [Docket no. 34 and 35], arguing that Plaintiffs' Reply purports to assert new legal theories.

IV.   ANALYSIS

The United States Court of Appeals for the Fifth Circuit has consistently recognized that in addition to immunity from liability, "qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.

5

2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)). The *Backe* court emphasized that the protection from pretrial discovery is "one of the most salient benefits of qualified immunity." *Id.* For this reason, the Fifth Circuit follows "a careful procedure" with regard to discovery when a motion asserting qualified immunity has been made. *Id.* Under that procedure, this court may only defer its qualified immunity ruling "if further factual development is necessary to ascertain the availability of that defense." *Id.* Before allowing any discovery, this court, "must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.' " *Id.* (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994–95 (5th Cir. 1995); and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

This specificity of facts necessary in cases when qualified immunity has been asserted is referred to as the "heightened pleading" requirement, which requires a plaintiff to plead "allegations of fact which focus specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir.1999) (citing *Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991, 995 (5th Cir.1995)).

In certain cases, it may be impossible to rule fairly on the qualified immunity question on the facts adduced by the parties early in the litigation. Those particular cases may be appropriate for narrowly-tailored discovery, designed fully to flesh out the evidence supporting or negating the immunity claim; however, because the doctrine of qualified immunity is designed to provide immunity from *suit,* not just from liability, a court should not permit overbroad, cumbersome, or expensive discovery that effectively destroys the purpose of the immunity doctrine. *Backe,* 691 F.3d 645, 648.

In order to permit such discovery, a court first must find that the plaintiff has "pled specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the

harm plaintiff has alleged and [specific facts] that defeat a qualified immunity defense with equal specificity." *Id.* at 648. Once that finding is made, the court must identify the questions of fact that cannot be resolved without further discovery. *Zapata v. Melson,* 750 F.3d 481, 485 (5th Cir.2014). Finally, the court must craft a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim...." *Boulos v. Wilson,* 834 F.2d 504, 507–08 (5th Cir.1987).

Plaintiffs in the case *sub judice* argue that qualified immunity-related discovery is necessary to determine the specific involvement of Chief Daughtry and Sheriff Bailey in the circumstances leading to Woods' death. Plaintiffs aver that discovery is also necessary to identify the precise official policies of the City of Pelahatchie, which were the moving force leading to Woods' death. Without conducting immunity-related discovery, Plaintiffs claim they are without sufficient knowledge to plead with peculiarly every act taken, the acts which would defeat Defendants' qualified immunity defense.

Defendants assert, in their Motion for Judgment on the Pleadings, that "the complaint fails to separate each defendant and identify what each defendant allegedly did wrong," and this "lumping technique" violates the pleading standard prescribed by Federal Rule of Civil Procedure 8[6]. Plaintiffs, however, argue that they should not be penalized for failing to plead the factual particulars of the alleged actions of Defendants when the facts are unknown to plaintiff, because those facts are "peculiarly within the knowledge of defendants." *Floyd v. City of Kenner, LA*, 351 F. App'x 890, 893 (5th Cir. 2009)(citing *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995).

---

[6] Fed. R. Civ. P. 8, which governs the general rules of pleading, states, in pertinent part:
   (a) A pleading that states a claim for relief must contain:
      (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
      (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
      (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Plaintiffs, thus, ask this court to allow Plaintiffs to amend later their Complaint to name additional parties as defendants in this action under Federal Rule of Civil Procedure 15(a)[7] if limited discovery provides the newly-discovered basis.  Rule 15(a) directs that leave to amend "shall be freely given when justice so requires" and mandates liberal amendment to facilitate determination of claims on the merits rather than on technicalities.  *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) "Unless there is substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id*.

Defendants herein argue that although courts sometimes give Plaintiffs an opportunity to add more facts, this device is improper when it is clear that Plaintiffs have pled their "best case", such that further pleading would be futile.  See, e.g., *Whitfield v. Miss. Bureau of Narcotics*,  2019 WL 613493, *7 n.1 (S.D. Miss. 2019).  Defendants contend that Plaintiffs here "did not explain what new factual allegations [they] could offer that would address the deficiencies in [their] complaint[,]" See *Van Deelen v. Cain*, 628 F. App'x 891, 900 (5th Cir. 2015).

Defendants argue further that Plaintiffs were required to investigate their case prior to filing suit.  See *Ochoa v. Tex. Metal Trades Council*, 989 F.Supp. 828, 832-33 (S.D. Tex. 1997) ("Rule 11 of the Federal Rules of Civil Procedure imposes a duty of reasonable investigation into the facts and the law prior to filing a document with a court.").    If Plaintiffs needed more information to

---

[7] Fed. R. Civ. P. 15 (a) Amendments Before Trial.
(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
    (A) 21 days after serving it, or
    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
(3) *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

prosecute their case, say Defendants, they could have sought it through public records requests or a complaint for discovery in state court.

This court notes that Plaintiffs may defeat a qualified immunity defense where they proffer a precedential case that squarely governs the conduct at issue. *Cope v. Cogdill*, 3 F.4th 198 204-12 (5th Cir. 2021). The United States Supreme Court has clarified that it is unreasonable for an officer to "seize an unarmed, nondangerious suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Even when a suspect is armed, a warning must be given, when feasible, before the use of deadly force. *Cole v. Carson*, 935 F.3d 444, 453-54 (5th Cir. 2019) F.3d at 453 (citing *Tennessee v. Garner*, 471 U.S. 1, 11–12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Furthermore, pursuant to Fifth Circuit jurisprudence, a Fourth Amendment violation occurs when an officer shoots an individual holding a gun, but the gun was not aimed at the officer.

In *Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021) the plaintiff, who "was having issues with suicidal thoughts" and drug use, led police on a low speed pursuit, which ended with the plaintiff being shot four times in his back and thigh. *Id*. 422. Shortly after the pursuit began, plaintiff stopped his vehicle, "hastily exited his vehicle and reached into the bed of his truck." *Id*. After reaching into the bed of his truck and retrieving nothing, plaintiff began lowering himself back into his vehicle. As he began lowering himself into his vehicle, the police fired six shots, shooting plaintiff four times in his back and thigh.

The district court in *Poole* denied the qualified immunity motion after it reasoned that a "jury could conclude that an officer shot a citizen four times without warning while the citizen was turning away and empty-handed." *Id*. at 420. Aggrieved, the officer asserting the qualified immunity defense sought an interlocutory appeal. The Fifth Circuit affirmed the district court's

decision, finding that "[o]ur review of the video evidence thus confirms what the district court recognized: there is a factual dispute about whether [the officer] gave a warning before shooting, whether Poole was turned away during the shooting, and whether it was apparent that Poole's hands were empty." *Id*. at 425.d.

In the case *sub judice*, this court is without sufficient information to determine whether Woods was empty-handed when he exited his home, and what directions, if any, were given to Woods, or to the other law enforcement officers by the named Defendants.

In light of the aforementioned legal principles, this court finds that limited discovery is necessary to determine Chief Daughtry and Sheriff Bailey's respective roles in Woods' death, the decision to use deadly force against Woods, and the failure to cease deadly force after Woods seemingly was no longer resisting and had allegedly signaled surrender. Limited discovery is also necessary regarding the policies governing the City of Pelahatchie's law enforcement officers, so that this court can determine whether Chief Daughtry or Sheriff Bailey violated any such policies while acting in their supervisory roles at the time of Woods' death.

This court further finds that it must allow Plaintiffs limited discovery to determine the identity of the unknown defendants who participated in the shooting death of Pierre Woods. *Colle v. Brazos Cnty*, 981 F.2d 237, 243 (5th Cir. 1993)("A plaintiff should be given an opportunity through discovery to determine the identify of a defendant."). See also, *Rathmann v. King*, 2021 WL 1392839 (S.D. Miss 2021)(district court allowed plaintiff limited discovery in a §1983 action to determine the identity of the Doe defendants).

Plaintiffs, in their Complaint, outline facts which might defeat qualified immunity:

Upon his exit from the home, defendants, **without warning**, began firing their weapons at Woods. He immediately fell to the ground and ***even after he fell to the ground, the Defendants continued to fire their weapons*** at Woods, which left both his body and home riddled with bullet holes.

> At the point that Woods exited the home, he ***posed no immediate threat to defendants or others*** and there existed no reason that the defendants could ***not give proper warning*** before using deadly force.

Defendants have objected to Plaintiffs' Reply in support of their discovery request on the qualified immunity matter. Plaintiffs included with that request a video of the fatal shooting. The video, which this court has chosen to consider, shows Woods exiting a house and being shot. Questions still abound: whether he had possessed a firearm and aimed it at the officers; whether the officers provided him fair warning; whether they fired upon his body as he lay prostrate on the ground, etc. Moreover, the question is open as to the identity of the videographer and what did this person observe.

This court must conduct a fact-based inquiry to determine whether Defendants' actions were "objectively reasonable in the light of the circumstances". *Watkins*, 2013 U.S. Dist. LEXIS at *3, 2013 WL 3357703. If Plaintiffs can establish, through limited qualified immunity discovery, that Defendants' actions were objectively unreasonable then Defendants would not be entitled to qualified immunity. This court cannot, based on the record before it at this juncture, determine such. Accordingly, Plaintiffs' request for qualified immunity discovery must be granted.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that plaintiff's *Motions to Lift Stay to Allow Qualified Immunity Related Discovery and Amendment of Complaint* **[Docket no. 23 and 26]** hereby are **GRANTED**.

**IT IS FURTHER ORDERED** that the parties are to conduct ninety (90) days of qualified immunity related discovery as set forth below:

11

1. Discovery sufficient to enable this court to determine (including the deposition of Chief Daughtry and Sheriff Bailey, if necessary) the extent of Chief Daughtry's and Sheriff Bailey's respective roles with regard to the February 18, 2019, incident, specifically: (a) whether Chief Daughtry and Sheriff Bailey were present at the scene; (b) whether Woods exited his home with a weapon in his hand; (c) what directions, if any, were given by Chief Daughtry or Sheriff Bailey to the other law enforcement officers present; (d) what directions, if any, were given by Chief Daughtry or Sheriff Bailey to Woods.

2. Discovery sufficient to ascertain the identities and roles of all law enforcement officers present at the scene; and

3. Discovery sufficient to ascertain the identities of other parties present at the scene, including the publisher of the video footage, allegedly depicting Woods' death.

**IT IS FURTHER ORDERED** that the following motions are hereby **DENIED WITHOUT PREJUDICE** and Defendants may reassert them at the close of the limited qualified immunity discovery period, if necessary: Defendant Sheriff Bailey's Motion for Judgment on the Pleadings **[Docket no. 7]**; and Defendants Chief Daughtry and City of Pelahatchie, Mississippi's Motion for Judgment on the Pleadings **[Docket no. 17].**

**IT IS FINALLY ORDERED** that upon completion of the limited discovery period, Plaintiffs shall have fourteen (14) days to file an amended Complaint. Defendants shall further file any supplemental briefing in response to Defendants' renewed Motions for Judgment on the Pleadings within fourteen (14) days of filing of Defendants' Motions.

SO ORDERED this the 14th day of March, 2022.

/s/HENRY T. WINGATE
UNITED STATES DISTRICT COURT JUDGE