IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**VANESSA BARRETT, et al.**                                                                **PLAINTIFFS**

**V.**                                                    **CIVIL ACTION NO. 3:21-CV-124-HTW-LGI**

**CITY OF PELAHATCHIE, et al.**                                                        **DEFENDANTS**

**ORDER**

Before this court is a *Renewed Motion* **[Docket no. 47]** *for Judgment on the Pleadings, or Alternatively, Motion for Summary Judgment Premised on Qualified Immunity*, filed by Defendants Rankin County, Mississippi, and Rankin County Sheriff Bryan Bailey ("Sheriff Bailey), in his individual and official capacities (collectively referred to as "the Rankin County Defendants").

The Rankin County Defendants, by way of their Motion *sub judice*, ask his court to dismiss them from this lawsuit under the auspices of Federal Rule of Civil Procedure 12(c) [1], or, in the alternative, convert their Motion to a Rule 56 [2] Motion, and grant summary judgment in their favor.

Plaintiffs, in their Memorandum Brief in Opposition [Docket no. 67], conceded that their claims against Rankin County, Mississippi, and Sherriff Bailey in his official capacity should be

---

[1] Fed. R. Civ. P. 12(c): Motion for Judgment on the Pleadings. After the pleadings are closed- but early enough not to delay trial- a party may move for judgment on the pleadings.

[2] Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part:
Summary Judgment.
   (a) Motion for Summary Judgment or Partial Summary Judgment.  A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

1

dismissed. This court, therefore, dismisses said claims from Plaintiffs' Amended Complaint with prejudice. Accordingly, in this Order, this court addresses only Plaintiffs' remaining individual capacity claims against Sheriff Bailey.

This court, however, notes that the present lawsuit names thirteen other law enforcement officers as Defendants, to wit: Zach Acy; George Barrentine; Chase Beemon; Tyson Burleson; Christian Dedmon; A.J. DiMartino, IV; Hunter Elward; Justin Evans; Cody Grogan; Geoff Rauch; Luke Stickman; Chance White; and Adam Whittington (collectively, "Rankin County Deputies"). These Rankin County Deputies have filed a separate Motion [Docket no. 75] seeking a judgment on the pleadings, or, alternatively, summary judgment in their favor, based on qualified immunity. This court does not address the Rankin County Deputies' arguments in its present Order; nonetheless, this court, throughout its opinion, points to various statements submitted by certain Rankin County Deputies, as said statements concern this court's assessment of Sheriff Bailey's Motion [Docket no. 47]. This court, further, refers collectively to all remaining defendants as "Defendants".

**PERTINENT BACKGROUND**

Plaintiffs herein are Vanessa Barnett and Dris Mitchell (together, "Plaintiffs"), who have filed the lawsuit *sub judice* under the auspices of Title 42 U.S.C. § 1983[3], alleging that the

---

[3] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C.A. § 1983 (West)

2

Defendants violated the Fourth Amendment[4] rights of Pierre Woods ("Woods") when law enforcement officers shot and killed Woods on February 18, 2019. Plaintiffs are the two natural mothers of G.W. and K.W., Woods' two surviving minor children who are Woods' alleged sole heirs and wrongful death beneficiaries. Plaintiffs have filed this action on the minors' behalf.

### *Procedural Posture*

Plaintiffs filed suit on February 17, 2021, against the City of Pelahatchie; Chief Joseph Daughtry, the Police Chief for the City of Pelahatchie[5]; Rankin County, Mississippi, and Rankin County Sheriff Bryan Bailey. In response to Plaintiffs' Complaint, on April 20, 2021, Sheriff Bailey, in his individual and official capacities, filed a Rule 12(c) motion premised on qualified immunity. [Docket no. 7] This Motion was denied without prejudice on March 14, 2022. [Docket no. 41]. In its Order denying Sheriff Bailey's first Motion, this court gave Plaintiffs 90 days to take qualified immunity related discovery and an opportunity to file an amended complaint thereafter. Plaintiffs filed their First Amended Complaint [Docket no. 45] on July 7, 2022. Plaintiffs' Amended Complaint, *inter alia*, added the Rankin County Deputies as parties to this litigation.

Subsequently, on July 18, 2022, the Rankin County Defendants filed their Answer and Defenses to Plaintiffs' First Amended Complaint [Docket no. 46]. Sheriff Bailey, on the same day, renewed his dispositive motion, based on qualified immunity [Docket no. 47], which Motion is now before this court.

---

[4] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV

[5] On January 25, 2023, the parties entered a Stipulation of Dismissal [Docket no. 92] and Agreed Judgement [Docket no. 93] dismissing the City of Pelahatchie and Chief Joseph Daughtry from this lawsuit. These parties, therefore, are not among the remaining Defendants discussed herein.

*Jurisdiction and Applicable Law*

This court previously has established that it possesses subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331,[6] as this case presents claims under federal laws and constitutional provisions. Plaintiff asserted a claim cognizable under 42 U.S.C. § 1983 by alleging that the Defendants, while acting under color of state law, used excessive force when they shot and killed Woods. The use of excessive force constitutes a violation of the Fourteenth Amendment right to due process, and, as such, is actionable under §1983. Venue is appropriate in this court, since the matters at issue arose within the Southern District of Mississippi.

Plaintiffs herein seek damages on behalf of Woods' minor children pursuant to the Mississippi Wrongful Death Statue, Miss. Code Ann. § 11-7-13[7]. This court applies Mississippi's Wrongful Death statute to this litigation under the direction of 42 U.S.C. §1988[8],

---

[6]  § 1331. Federal Question
  The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
28 U.S.C. §1331

[7] Mississippi's Wrongful Death Statute, codified at Miss Code Ann § 11-7-13 (2019), provides in pertinent part:

In an action brought pursuant to the provisions of this section by the widow, husband, child, father, mother, sister or brother of the deceased or unborn quick child, or by all interested parties, such party or parties may recover as damages property damages and funeral, medical or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act or omission or breach of warranty, whether an estate has been opened or not. Any widow, husband, child, father, mother, sister or brother of the deceased or unborn quick child, or interested party may bring an action pursuant to the provisions of this section outside an estate, regardless of whether there are real or personal assets of an estate. Any amount, but only such an amount, as may be recovered for property damage, funeral, medical or other related expenses shall be subject only to the payment of the debts or liabilities of the deceased for property damages, funeral, medical or other related expenses. All other damages recovered under the provisions of this section shall not be subject to the payment of the debts or liabilities of the deceased, except as hereinafter provided…

[8] 42 U.S.C. §1988 provides, in pertinent part:
The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and

4

which provides, in relevant part, that when federal law is deficient in the provision of suitable remedies, state statutory or common law applies unless it is inconsistent with federal law. See e.g. *Rhyne v. Henderson Cnty.*, 973 F.2d 386 (5th Cir. 1992) (holding that §1988 incorporates the forum state's wrongful death statute to §1983 civil action).

### *Statements of Facts*

On February 18, 2019, law enforcement officers responded to reports of fired gunshots at 104 Dillard Street, Pelahatchie, Mississippi, a residence belonging to Woods' cousin. Defendants assert that when Rankin County dispatch received a call for assistance with an active shooter, the information was relayed to Sheriff Bailey. According to Sheriff Bailey, he activated the Rankin County Special Response Team ("Rankin SRT")[9] to the scene, and then personally drove to the residence. The SRT Team included Defendants Rankin County Deputies, named above. Sheriff Bailey was solely responsible for supervising the SRT team.

Defendants state that when they arrived on the scene, Woods was inside the home alone and appeared disoriented, mentally challenged and possibly intoxicated. Sheriff Bailey contends that he, along with other officers and the Rankin County hostage negotiator, attempted to negotiate with Woods, urging Woods to relinquish his weapon and exit the house peacefully. These negotiation attempts allegedly lasted over an hour. Despite Defendants' repeated requests, Woods initially refused to come out of the residence. The Rankin SRT then placed a mobile robot with video feedback into the house to determine Woods' physical location within the residence.

---

changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

[9] The SRT team is a special response team comprised of Rankin County deputies who are selected to receive tactical operations training and develop a level of proficiency in the use of specialized equipment and firearms.

Defendants claim that "after all negotiation tactics had failed, and for the protection of the officers and bystanders around the residence", the Rankin SRT fired multiple oleoresin capsicum gas (tear gas) canisters into the home. Woods, thereafter, existed the residence via the front door.

Plaintiffs have submitted a 29-second Video depicting Woods' exit from the house and death [Docket no. 35]. This Video was filmed by a neighbor. Defendants contend that after tear gas was deployed into the house, Woods fired three shots from the bedroom, which can be heard at 0:00:01 through 0:00:02 of the Video. This court notes that the Video later shows Woods exiting the premises; however, the footage does not depict any events that transpired inside the residence. Nor does the Video make clear whether Woods was armed at the time of his exit.

The parties present inconsistent accounts of what transpired.

Plaintiffs' Amended Complaint states:

> While physically disoriented and visually impaired from the tear gas, Woods began to run toward the front door of his home with his hands extended above his head. Although Woods had a pistol in one of his hands, both his hands were extended above his head as he approached the front door. Once he reached the front door of his home, Woods immediately threw the pistol to the ground and it landed in the area where Deputy Hunter Elward and Deputy Zach Acy were positioned.
>
> Upon [Woods'] exit from the home, Defendants, without warning, began firing their weapons at Woods. [Woods] immediately fell to the ground and even after he fell to the ground, the Defendants continued to fire their weapons at Woods, which left both his body and home riddled with bullet fragments…

[Docket no. 45 at ¶ 23].

Plaintiffs allege that after Woods tossed his weapon to the ground and crossed the threshold of the front door, he posed no threat to the Defendants.

Defendants, however, paint a different picture. The Rankin County Deputies, members of the Rankin SRT, stated that they saw Woods pointing his gun at the officers. Defendants claim that they responded with deadly force because they perceived a legitimate threat from Woods. A

6

statement submitted by Investigator Zach Acy, a member of Rankin SRT, who was present on the scene, states:

> Investigator Acy fired one impact round at the suspect due to being in fear for his life, but the suspect continued to advance. The suspect was then shot by other officers that had lethal means due to him still running with the pistol in his hand. Once the suspect got to the front door he threw the pistol at officers on the car and it struck Deputy Elward who was next to Investigator Acy.

[Docket no. 66-3].

Defendants claim that the three shots Woods fired from within the residence were aimed at the Rankin SRT. Sheriff Bailey states that he heard the gunshots, and when he heard the officers "return fire", he was situated behind the Rankin SRT armored vehicle. [Docket no. 47-3, pp, 59-60]. Sheriff Bailey claims he did not instruct the Rankin SRT to start shooting, nor did he see the shooting. [*Id.*, pgs. 60-61]. Furthermore, claims Sheriff Bailey, he never fired a shot. [*Id.*, pg. 94]. Finally, says, Sheriff Bailey, as soon as he was able to obtain a visual of Woods and see that Woods was on the ground, yelled, "Cease fire, cease fire." [*Id.*, pg. 61]. Other officers then allegedly repeated this phrase out loud. The parties agree that the shooting stopped after Sheriff Bailey yelled "Cease fire!".

Plaintiffs assert the following claims against Sheriff Bailey:

> 64. … Bailey decided upon, implemented, and oversaw the strategies and tactics used by the defendant officers on the scene. The defendant officers violated Wood's constitutional rights and Bailey, acting in a supervisory role at the time of the shooting death of Woods, had every opportunity in his supervisory role to take reasonable measures to prevent harm to Woods and failed to do so.
>
> Bailey allowed the defendant officers to gun Woods down despite the fact that he posed no threat to the officers at the time that he was shot. More specifically, Bailey gave the defendant officers authority to shoot Woods, positioned himself where he could no longer see Woods, and allowed the officers to continue to shoot Woods after he fell to the ground and clearly was no longer a threat before he issued the command to "*Cease Fire*." Despite the fact that Woods was severely wounded and helpless, the defendant officers obeyed Bailey's directive to shoot at Woods until they received the "*Cease Fire*" order from him.

[Docket no. 45, ¶ 64].

7

Plaintiffs claim that, at the point that Woods crossed the threshold of the residence, he posed no immediate threat to defendants or others and as such, there existed no reason to employ deadly force against Woods. Furthermore, say Plaintiffs, Defendants employed unjustified, excessive force when they continued to shoot Woods after he had fallen to the ground and was no longer a threat. Plaintiffs assert that Sheriff Bryan Bailey is individually liable because: he was present at the scene; he was actively involved in the negotiations; and he played an important role in use of the alleged excessive force which led to Woods' death. Sherriff Bailey, contrariwise, asserts that he is entitled to qualified immunity on any claims against him.

## STANDARDS OF REVIEW

Pursuant to Fed. R. Civ. Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." When considering a 12(c) motion to dismiss, courts employ the same standard as that of deciding a motion under Rule 12(b)(6)[10]. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.2d 305, 313 (5th Cir. 2002). Accordingly, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). Pleadings, therefore, are to be construed liberally, and "judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id*. (citing *Voest-Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 891 (5th Cir. 1998)).

Alternatively, Fed. R. Civ. P. 56 states, in relevant part, that summary judgment "should be rendered if the pleadings, discovery and disclosure of materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

---

[10] **Rule 12(b) How to Present Defenses**. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
***(6) failure to state a claim upon which relief may be granted.***

8

of law." Fed. R.Civ.P. 56(c). The existence of a material question of fact is a question of law that the district court is bound to consider before granting summary judgment. *John v. State of Louisiana*, 757 F.2d 698, 712 (5th Cir. 1985). The trial court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of a disputed factual issue does not foreclose summary judgment: the dispute must be genuine and the facts material. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). Ultimately, the nonmoving party has the duty to demonstrate a genuine issue of material fact to defeat a motion for summary judgment. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).

## DISCUSSION

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Stated differently, the doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011); *Crostley v. Lamar County Texas,* 717 F.3d 410, 422-24 (5th Cir. 2013) (Qualified immunity extends to public officials "to the extent their conduct is objectively reasonable in light of clearly established law.").

Once a defendant claims qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Jenkins v. Town of Vardaman, Miss.*, 899 F. Supp. 2d 526, 531 (N.D. Miss. 2012) ("it is

the plaintiff, rather than the defendant, who must do most of the 'heavy lifting' in the qualified immunity context").

This court must make two inquiries to decide whether an official is entitled to qualified immunity: (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right, *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2009)); and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Unless the public official's conduct violated a clearly established constitutional right, he is cloaked with qualified immunity. (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Even if the official's conduct violated a constitutional right, the official is still cloaked in qualified immunity if his or her conduct was objectively reasonable. *Nerren v. Livingston Police Dept.,* 86 F.3d 469, 473 (5th Cir. 1996).

Sheriff Bailey has invoked the shield of qualified immunity; thus the burden shifts to Plaintiff to rebut that defense. *Pierce v. Smith,* 117 F.3d 866, 871–72 (5th Cir.1997) (a § 1983 defendant who "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion" places the burden on the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.").

Sheriff Bailey cannot be liable under a theory of vicarious liability and/or *respondeat superior*, but instead can only be found individually liable under § 1983 on the basis of his own personal participation in the alleged wrongful conduct. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted). In other words, Plaintiffs must "show [Sheriff Bailey's] own conduct violated [Woods'] constitutional rights." *McDonald v. McClelland*, 779 F. App'x 222, 227 (5th Cir. 2019) (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). Plaintiffs admit that Sheriff Bailey did not personally use deadly force against Woods on February 18, 2019, but they instead allege theories of bystander liability and

10

supervisory liability against this Defendant. Under either theory, Plaintiffs must prove that Woods' Fourth Amendment rights were violated in order to overcome Sheriff Bailey's Motion. *See Phillips v. Whittington*, No. 20-30731, 2022 WL 797418, at *9 (5th Cir. Mar. 15, 2022).

This court finds that there exist genuine disputed issues as to whether the Rankin County Deputies, SRT Officers who were involved in the incident, violated Wood's Fourth Amendment rights by using excessive force, and whether Sheriff Bailey violated Woods' Fourth Amendment rights under the theory of supervisory liability or bystander liability.

The United States Supreme Court has made clear that it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S.1, 11, 105 S.Ct. 1694, 85 L.Ed 2d 1 (1985). The Court further has held that a Fourth Amendment violation occurs when an officer shoots an individual holding a gun when the gun was not aimed at the officer. *Id*. See also *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019).  Excessive force jurisprudence also dictates that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under Section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

The record evidence in the case *sub judice* raises serious factual questions as to: whether Woods posed a threat at the time he crossed the threshold of the residence; whether Woods pointed his weapon at the officers upon exiting the residence; whether Woods surrendered his weapon immediately upon existing the residence; whether Sheriff Bailey had a reasonable opportunity to realize the excessive nature of the force used by the shooting offers and intervene to stop it. These issues fall into the category of factual disputes a jury must decide.

Further, statements by the several officers on the scene are at odds with each other: for instance, as stated *supra*, Rankin County Deputy Investigator Zach Acy stated:

> Once the suspect got to the front door he threw the pistol at officers on the car and it struck Deputy [Hunter] Elward who was next to Investigator Acy.

[Docket no. 47-4, p. 1].

Rankin County Deputy Defendant Chase Breeman's Affidavit, however, contends that when Woods first got to the front door, Woods's weapon was pointed at the officers, and that Woods only threw his gun at Deputy Edwards at some point thereafter:

> ..The suspect then entered the frame of the open front door. I immediately noticed the suspect still had the weapon in his hand at shoulder level pointed at myself and the entry team. I then began to use deadly force by firing rounds from my department issued Daniel Defense .223 [Rifle]. During this time, I heard my teammate (Hunter Elward) make a loud grunting sound and observed from my peripheral vison him fall to the ground. The contact team then placed the suspect into a pair of "flex cuffs".

[Docket no. 47-4 at p. 2].

Another Rankin County Deputy Defendant, Tyson Burleson, states that Woods never threw his gun away at all; rather, says Deputy Burleson, Woods was holding his weapon as he lay on the ground after the incident:

> As I walked toward the front door I noticed the suspect that was aiming his gun at me laying on the ground. He was then placed into handcuffs for our safety.

[Docket no. 47-4 at p. 4].

Finally, Defendant Rankin County Deputy Hunter Elward, the officer, allegedly to have been struck by Wood's weapon, states that he discharged his rifle approximately 8 times in Woods's direction after Woods exited the residence. Deputy Elward claims that Woods threw his pistol at Deputy Elwards as Woods was falling to the ground after taking fire. [Docket no. 47-4 p. 5].

This court notes, too, that the Video shows that once Woods was shot, he immediately fell to the ground and did not move. The officers continued to shoot for at least seven (7) more seconds after Woods hit the ground. Yet, the Affidavits submitted by Rankin County Deputies [Docket

12

nos. 75-1 and 75-2] state that all Rankin County Deputies fired only at the residence's bedroom window when Woods was inside the residence, and that none of them shot at Woods as he exited the front door. This testimony does not comport with the Video presented, which depicts officers firing their weapons at a face-down Woods for at least 7 seconds after he exited the front door.

This court also notes that Sheriff Bailey held the authority to order "cease fire", which would have immediately stopped the officers' shooting. Based on the record before it, this court cannot state that Sherriff Bailey's actions were reasonable under the circumstances.

This court finds that the record evidence is sufficient to overcome Sheriff Bailey's qualified immunity defense. This court, therefore, is unwilling to dismiss Defendant Sherriff Bailey in his individual capacity at this stage of the litigation.

## CONCLUSION

For all the reasons stated above, Sheriff Bailey's *Renewed Motion for Judgment on the Pleadings, or Alternatively, Motion for Summary Judgment Premised on Qualified Immunity* **[Docket no. 47]** hereby is **DENIED**.

**SO ORDERED this the 17th day of March, 2023.**

/s/HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**